IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 8, 2005

## MATTHEW MELTON JACKSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**Nos. 01-0022; 01-0086     Michael R. Jones, Judge**

_____

**No. M2004-01342-CCA-R3-PC - Filed May 18, 2005**

_____

The petitioner, Matthew Melton Jackson, appeals as of right the dismissal of his petition for post-conviction relief by the Robertson County Circuit Court. He seeks relief from his convictions for two counts of aggravated rape, one count of aggravated kidnapping, one count of aggravated robbery, and effective sentence of twenty-five years. The petitioner contends that he received the ineffective assistance of counsel and that his guilty pleas were not voluntary or knowing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the appellant, Matthew Melton Jackson.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and B. Dent Moriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Two multi-count indictments were returned against the petitioner charging him with two counts of aggravated rape, a Class A felony, and one count of aggravated kidnapping, a Class B felony, in one indictment and with one count of aggravated robbery, a Class B felony, and one count of theft over $500, a Class E felony, in the other indictment. Pursuant to a plea agreement, he pled guilty to all five offenses, with the sentence lengths to be determined by the trial court but to be served concurrently with each other. Following a sentencing hearing, the trial court imposed sentences of twenty-five years for each aggravated rape conviction, twelve years for the aggravated kidnapping conviction, ten years for the aggravated robbery conviction, and two years for the theft conviction, for an effective sentence of twenty-five years to be served at one hundred percent. His sentence was affirmed on appeal. State v. Matthew Melton Jackson, No. M2001-01999-CCA-R3-

CD, Robertson County, slip op. (Tenn. Crim. App. Feb. 7, 2003). However, the petitioner failed to include a transcript of his guilty plea hearing in the appellate record, and this court noted that the omission of the transcript particularly hindered review of the sentences. Id. at 6.

The underlying facts are taken from the opinion on appeal: The petitioner accosted the two victims as they were leaving their job at a video store. The petitioner pointed a pistol at them, forced them to open the store's safe, and put the money in a bag. The petitioner then motioned the two women into the ladies restroom, but changed his mind and ordered one to accompany him to the other side of the store. He warned the second victim to stay in the restroom and made the first victim undress at gunpoint. The petitioner raped the first victim two times, first with the barrel of his gun and then with his penis, using a small plastic bag as a makeshift condom. During the assault, Springfield Police Sergeant Ricky Morris drove into the store's parking lot while on routine patrol. The petitioner saw the police car and fled the store. The police officers searched the immediate area and captured the petitioner behind the store shortly thereafter. The officers recovered the pistol used to commit the crimes and $746.26 in cash. See id. at 3-4.

The petitioner filed a petition for post-conviction relief alleging that his guilty pleas were involuntary and unknowing because he was unaware of the constitutional rights he was waiving at the time he entered his pleas. He also alleged that he received the ineffective assistance of counsel in that his attorney failed to investigate the facts of his case properly, communicate with him, and prepare adequately for trial. He argued that the attorney also failed to provide the appellate court with a complete record and failed to argue that the trial court erred by using a juvenile conviction to enhance his sentence.

At the post-conviction hearing, the petitioner testified that his attorney was appointed to represent him in January 2001. He said they did not discuss the statements he made to the police after his arrest. He said that he informed his attorney that he was intoxicated at the time he was arrested and interrogated but that his attorney did not file a motion to suppress his statements. He recalled meeting with his attorney only two times for a total of twenty minutes, once in February and again in May. He said his attorney met him in February to tell him that tests performed by the state matched his DNA with that in the semen recovered from the rape victim. He said he saw his attorney the second time on May 15, 2001, the day before his trial was scheduled to begin. He said he discussed the plea agreement with his attorney once, on May 15, and pled guilty the next day. He said that his attorney did not inform him he could refuse to accept the plea agreement and that if he had known he could file a motion to suppress his statements to the police and go to trial, he would not have pled guilty. He said he was also unaware that there was a possibility his aggravated kidnapping conviction could have been merged with the aggravated robbery or aggravated rape convictions. He said he learned later that theft is a lesser included offense of robbery and that under the circumstances in his case, he could not be convicted of both offenses. He said that he did not have an opportunity to discuss with his attorney the joyriding conviction which occurred while he was a juvenile and that he had no contact with his attorney during the pendency of his appeal. He said his attorney never discussed with him the possibility of going to trial and did not file any motions, which forced him to file motions. He said his attorney acquired the facts of his case from

the news media and radio broadcasts. He said his attorney handled his appeal improperly by failing to give the appellate court a complete record.

The petitioner recalled that the trial court informed him during the plea hearing that he had a right to have a jury trial but that there would be no trial if he pled guilty. He said he was unaware pleading guilty would result in his not having a jury trial. He recalled that he had a private conversation with his attorney when the trial court brought this to his attention at the plea hearing and that his attorney then instructed him to answer yes, "just for court purposes," to all questions asked by the trial judge that day. He said he was also unaware he was entering guilty pleas at the plea hearing. He said he thought the purpose of the hearing was to order that a psychological evaluation be performed on him to adjudge his mental competency for trial. He said he also did not know the purpose of the sentencing hearing. He said he understood sentencing, but he thought the purpose of the hearing was to present the results of the psychological evaluation, not sentence him. Regarding his case, he claimed his attorney presented him with three options: accept the prosecutor's plea agreement, plead for mercy from the trial court, or petition the governor for a pardon. He said he informed his attorney that he was not interested in any plea agreement.

The petitioner said that his attorney was unaware of the facts of his case and that this became evident when the attorney presented the factual basis for the charges to the trial court at the plea hearing. He said his attorney made the following misstatements to the trial court: The petitioner was apprehended in a store or café, when in fact he was caught in the grass by the highway; the petitioner was charged with robbing a Blockbuster Video Store, when he robbed a Video Checkout Store; the pistol was recovered from the money bag the petitioner threw over a fence, when the pistol was actually recovered from the petitioner's pants pocket; the petitioner locked one of the victims in the storeroom during the rape, when he actually placed her in the bathroom and the door was unlocked; the petitioner took the rape victim to the front of the store to rape her, when he actually took her to the rear of the store; and other factual misstatements. The petitioner said he was diagnosed as being "psychopathologic" during his childhood. He said his attorney told him he would contact his mother to acquire his medical records and arrange for her to testify. He said his attorney misstated his condition to the trial court as "schizophrenic," however, and never contacted his mother.

On cross-examination, the petitioner testified that he attended college for three years and studied business management. He acknowledged reading the transcript of the guilty plea hearing but iterated that he did not understand all of the trial court's questions. He said that he understood when the trial court asked him if he was guilty of aggravated rape but that he did not know he was pleading guilty when he answered affirmatively. He said his attorney instructed him to answer yes to whatever question the trial judge posed because "if [he] was found guilty, then it'd look good because [he] had admitted in open court to the charge." He said that he did not lie during the plea hearing but admitted that he did not tell the truth. He also admitted he knew he was being sentenced at the sentencing hearing. Shown the guilty plea petition, the petitioner acknowledged that the signature on it was his but claimed that he did not read the document and that it was not completely filled out when he signed it. He said that the sexual penetration of the victim was consensual and

that he did not rape her. However, he admitted he had not met the victim before their encounter at the video store.

The petitioner's attorney testified that he was appointed to represent the petitioner in January 2001. He said he interviewed the officers involved with the petitioner's arrest but not the victims. He said identification of the petitioner was not an issue in his case because the petitioner was apprehended shortly after the crime was committed and gave a multiple-page confession to the police. He said that the petitioner never informed him he was intoxicated at the time of his arrest or interrogation by the officers but that if he had, a motion to suppress may have been proper. He said no evidence received from the officers, the victims, or the petitioner indicated that the petitioner was intoxicated at that time. He said that he met with the petitioner four or five times for a total of two to three hours. He said the DNA test results indicated the petitioner's DNA was on the gun and the plastic bag used as a condom during the rape. He said he and the petitioner discussed the evidence and the facts of the case. He said the case became a matter of acquiring the most favorable settlement for the petitioner because the DNA test results linked the petitioner to the weapon and the victim, the petitioner was "caught in the act," and he confessed to committing the robbery in his statements to the police. He said that the petitioner asked him to negotiate a plea agreement and that on the morning the trial was scheduled to begin, an agreement was negotiated. He said the petitioner was given until the next day to decide whether to accept the state's offer. He said as a special condition in the agreement, the petitioner's mental competence would be determined by a medical doctor before the plea agreement became valid. He said he informed the petitioner that a jury trial was one option but that the charged offenses involved mandatory penitentiary time. He said that the petitioner wanted a deal which gave him concurrent sentences and that he eventually got what he wanted.

The petitioner's attorney admitted that he did not discuss the possibility of merging the kidnapping conviction into the robbery or rape convictions and said that the merger would not matter because the petitioner would get a "free kidnapping" with concurrent sentencing. He admitted that having one less felony conviction on the petitioner's record could be advantageous for him at some point but said that it was immaterial to his sentence in this case. He denied telling the petitioner to answer "yes" to whatever question the trial court asked him. He also denied telling the petitioner that his answers to the trial court did not matter because they were "just for court purposes." He said that he explained to the petitioner he was pleading guilty and that the petitioner understood what he was doing. He admitted the charge of theft should have been dismissed as a lesser included offense of the robbery. He explained that he probably missed that issue because, like the merging of the kidnapping conviction, it was another "free ride" in that he was "pleading guilty to something but getting no punishment." However, he acknowledged that having an additional felony conviction on one's criminal record could be considered punishment. He also admitted he made numerous mistakes when relating the factual basis at the plea hearing but offered no explanation. Regarding the petitioner's prior conviction for joyriding, he recalled the offense was a misdemeanor but did not recall the petitioner telling him he was a juvenile at the time of the offense. He said the trial court gave the conviction little weight in sentencing. As for the petitioner's appeal, he said only sentencing issues could be argued. He explained he did not include the plea hearing transcript in the

record on appeal because he believed the information in it was irrelevant. He said that because the review was de novo, the appellate court did not require the plea hearing transcript unless it concluded the trial court erred and had to assume the sentencing function, which it did not.

On cross-examination, the petitioner's attorney denied that the petitioner ever told him his sexual contact with the victim was consensual but said that instead, the petitioner initially denied it happened at all. He said that he read the transcript of the petitioner's confession to the police and that it contained nothing to make him suspect the petitioner was intoxicated. He said he telephoned the petitioner's mother, who refused to testify. He said that he would have tried the case if the petitioner and the prosecutor had not been able to reach an agreement but conceded that he would have needed a few more days to prepare because he believed the case should settle. He said that his primary objective in negotiating the plea agreement was avoiding any consecutive sentences, which would have made possible a punishment range of thirty-eight to sixty-two years. He said the petitioner had no viable defense strategy, considering his twenty-page confession, the recovery of the weapon and money, and the DNA test results linking the petitioner with the gun and the victim.

After considering the testimony and the evidence presented, the trial court concluded that the attorney's misstatement of the facts did not affect the voluntariness of the petitioner's guilty pleas. The trial court found "incredible" the petitioner's claim he was unaware he was pleading guilty at the plea hearing. It also found that the petitioner was adequately advised of the nature of the charges and possible sentences; that he was advised of his constitutional rights and subsequently waived them; that he was aware that a jury trial was not forthcoming following his pleas of guilty; and that the trial court did not violate any procedural requirements, including Rule ll, Tenn. R. Crim. P., in accepting the guilty pleas. The trial court determined that the petitioner's theft conviction should be set aside as a lesser included offense of aggravated robbery and found that the petitioner's attorney was not informed that the petitioner's offense of joyriding occurred while he was a juvenile. From the trial court's perspective, the most serious allegation in the petition was the attorney's failure to include the plea hearing transcript in the record on appeal. However, the trial court found that the petitioner failed to establish that his appeal would have been successful but for the omission of the transcript or to present any legal authority that the enhancement and mitigating factors were not properly applied at his sentencing. As for the possibility of merging the aggravated kidnapping conviction into his conviction for aggravated rape, the trial court found the petitioner failed to establish that an issue existed under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). It found that placing the second victim in the bathroom was separate and apart from the rape of the first victim and, thus, that an Anthony issue did not exist. In conclusion, the trial court found that the petitioner failed to prove that his guilty pleas were not voluntary and intelligent or that he received the ineffective assistance of counsel.

On appeal, the petitioner contends that the ineffective assistance of counsel received during the plea negotiations, combined with the trial court's failure to adhere to the requirements set forth in Rule 11, Tenn. R. Crim. P., and State v. Mackey, 553 S.W.2d 337 (Tenn. 1997), rendered his guilty pleas unknowing, involuntary and unintelligent. He also contends that he received the ineffective assistance of counsel during his appeal which warrants a new trial in his case. The state

contends that the petitioner's guilty pleas were knowing and voluntary and that he received the effective assistance of counsel pre-trial and on appeal.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). However, we review the trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, under a de novo standard. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-203.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

## A. The Guilty Pleas

The petitioner contends that he received the ineffective assistance of counsel during plea negotiations, thereby rendering his guilty pleas unknowing, involuntary, and unintelligent. In support of this contention, he points to his attorney's numerous misstatements while relating the factual basis to the trial court at the plea hearing and to the fact that his attorney allowed him to plead guilty to theft, a lesser included offense of another offense to which he pled guilty. He argues that his attorney failed to inform him of the possibility that his aggravated kidnapping conviction may have merged into either the aggravated rape or aggravated robbery conviction and that, but for counsel's failure to advise him of "all the possibilities," he would not have pled guilty.

As for counsel's misstatements while relating the factual basis for the petitioner's guilty pleas to the trial court, the record reflects that none of his statements concerned material facts. The petitioner's guilt of the offenses was not based in any part on the name of the video store or whether he was apprehended in a café or a field of grass. Also, it was not material whether the petitioner raped the victim in the front or rear of the store, whether the kidnapping victim was confined or locked in a storeroom or bathroom, or whether the pistol used to commit the rape was recovered from the money bag or the petitioner's pocket. The petitioner has failed to demonstrate prejudice.

Regarding the petitioner's conviction for theft, the trial court found the petitioner was correct in that his guilty plea to theft was unwarranted because it was a lesser included offense of the robbery charge. The trial court ordered that the theft conviction be set aside and an amended judgment be entered dismissing the theft count in the plea settlement. We fail to see how these circumstances prejudiced the petitioner relative to his other guilty pleas.

As for the possibility that his aggravated kidnapping conviction may have been merged into either the aggravated rape or aggravated robbery convictions, we conclude that counsel's explanation why this was not pursued does not reflect adequate performance. However, we conclude the petitioner was not prejudiced by counsel's deficiency. In State v. Dixon, 957 S.W.2d 532, 534-35 (Tenn. 1997), our supreme court explained that "[t]he Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery," and "any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." One commits aggravated kidnapping who knowingly removes or confines another so as to interfere substantially with the other's liberty and to facilitate the commission of a felony, flight thereafter, or with the intent to inflict serious injury on the victim or another. See T.C.A. § 39-13-304. The kidnapping of the second victim by placing her in the bathroom was not necessary to complete the act of raping the first victim and, because it occurred after the petitioner removed the money from the safe, it was not necessary to complete the act of robbery. The petitioner did not receive the ineffective assistance of counsel relative to his guilty pleas.

The petitioner contends that he also received the ineffective assistance of counsel on appeal because his attorney failed to include the guilty plea hearing transcript in the appellate record and failed to argue that the trial court erred by considering his juvenile conviction during sentencing. The state responds that the attorney's choice not to include the plea hearing transcript was a tactical decision which this court should not second guess and that the petitioner failed to show that his attorney knew he was a juvenile at the time he committed the offense. The state contends that the petitioner also failed to show that the trial court was prohibited from using the joyriding conviction to enhance his sentence in the event he was a juvenile at the time and that even if his counsel's performance was deficient, the petitioner failed to demonstrate that he suffered prejudice as a result.

As previously noted, this court observed that the petitioner did not include a transcript of the guilty plea hearing in the record on appeal and that the trial court had specifically considered the evidence presented at the guilty plea hearing in determining the sentence. This court stated that the omission of the transcript particularly hindered our review of the enhancement and mitigating factors applied by the trial court, and we presumed that the evidence not included in the record would have supported the imposition of the petitioner's sentences. Jackson, slip op. at 3, 6. At the post-conviction hearing, the petitioner's attorney testified that it was a conscious decision on his part not to include the plea hearing transcript in the appellate record because he deemed the information contained in it irrelevant to the issues before this court. He disagreed that the court was hindered by the incomplete record and said that the court would only require the transcript if it determined the trial court erred and it was necessary to resentence the petitioner. He testified that because this court concluded the trial court did not err, it did not require the transcript. His statements are incorrect.

The opinion in that appeal reveals that because the record on appeal failed to include the plea hearing transcript, this court presumed that the evidence not included in the record would have supported the imposition of the petitioner's sentences and the trial court's determinations. Thus, this court's review of the application of enhancement factors (10) and (16) and mitigating factor (1) was incomplete and hindered by the attorney's decision to not provide this court with a proper record. Id. at 5-6. When a defendant challenges his or her sentence, this court conducts a de novo review of the sentence by considering, among other things, the evidence received at trial and the nature and characteristics of the criminal conduct. See T.C.A. § 40-35-210(b). For those defendants who plead guilty, the guilty plea hearing is the equivalent of a trial, because it allows the state the opportunity to present the facts underlying the offense. State v. Keen, 996 S.W.2d 842, 843-844 (Tenn. Crim. App. 1999). For this reason, a transcript of the guilty plea hearing is needed to conduct a proper review of the sentence imposed. Id. at 844. We conclude that the attorney's failure to provide this court with the transcript of the plea hearing on appeal constituted deficient performance.

As for prejudice, we believe the record reflects that although the trial court stated that it recalled the guilty plea proceeding and would "certainly be using the factual basis that was presented at that time" in its sentencing determinations, the guilty plea hearing did not provide any evidence to support the enhancement and mitigating factors applied in the petitioner's case which was not also

provided at the sentencing hearing. The facts provided in the presentence report in the petitioner's appeal essentially mirrored the facts that would have been provided this court by the plea hearing transcript. The petitioner's appeal primarily focused on the trial court's use of enhancement factors (10) and (16) in determining his sentence for count one, aggravated rape. In finding the record too incomplete to ascertain whether the facts warranted application of factor (10), appropriate when the defendant possessed or employed a firearm during the commission of the offense, this court concluded that even if the trial court's use of it were improper, the remaining enhancement factors justified the imposition of the maximum sentence for the offense. Jackson, slip op. at 5; see T.C.A. § 40-35-114(10). The remaining enhancement factors used to determine the petitioner's sentence involved one prior misdemeanor conviction and findings concerning the treatment of and injuries sustained by the victims, who testified at the sentencing hearing. See T.C.A. § 40-35-114(2), (6), (7), (8), (11), and (17). Because we conclude that the performance of the petitioner's attorney did not alter the results of the proceeding, the petitioner has failed to demonstrate that he suffered prejudice.

The petitioner also contends that his attorney was deficient for not arguing on appeal that the trial court erred by considering his conviction for joyriding during sentencing because he was a juvenile and for not communicating with him during the pendency of his appeal. As for his conviction, the presentence report reflects that the petitioner said he was convicted of misdemeanor unauthorized use of a vehicle in North Carolina. It also reflects that he was arrested when he was eighteen years old. The trial court found that the petitioner failed to inform his attorney he committed the offense while a juvenile. The record does not preponderate against this finding and does not otherwise indicate that the North Carolina conviction was invalid. Regarding the lack of communication, the petitioner claims that his attorney failed to answer the letters he sent him from jail while his appeal was pending. However, the petitioner has failed to show how the lack of communication prejudiced his case. The petitioner did not receive the ineffective assistance of counsel in the appeal.

## II. VALIDITY OF GUILTY PLEAS

The petitioner contends that his guilty pleas were rendered unknowing, involuntary and unintelligent by the trial court's failure to follow Rule 11, Tenn. R. Crim. P., and State v. Mackey, 553 S.W.2d 337 (Tenn. 1997). The record reflects that during the plea hearing, the petitioner's counsel read the charges against the petitioner contained in the indictments, reviewed the range of punishment associated with each of the five offenses, and informed the trial court that the petitioner intended to plead guilty to all five offenses. The petitioner's attorney informed the trial court that the petitioner had appeared to be sane and competent during discussions and to be intelligent, articulate, and knowledgeable during the plea negotiation process. The trial court then informed the petitioner that he was under oath and that he was subject to perjury charges for untruthful statements. The trial court restated the charged offenses, reviewed the maximum and minimum punishment for a Class A felony offense, and gave a brief overview of the sentencing process. The petitioner acknowledged that he discussed the plea agreement with his attorney and said that he understood his case and the evidence against him. The trial court informed the petitioner he had a right to plead not

guilty, to confront witnesses, and to have a jury trial represented by an attorney. Regarding waiver of his right to a jury trial, the following colloquy occurred:

COURT: Do you understand that by pleading guilty, that there is not going to be any trial?

[PETITIONER]: Yes, sir.

COURT: Do you understand that there is not going to be any jury?

[PETITIONER]: I was unaware of all that --

COURT: Sir?

[COUNSEL]: There is no jury trial --

[PETITIONER]: No, but he's saying by me pleading guilty, there will be no jury, no trial – so I will automatically – (inaudible) --

(Whereupon, Counsel and [the Petitioner] confer briefly)

[PETITIONER]: Yes, I understand.

COURT: You understand that there won't be any jury here to hear any evidence?

[PETITIONER]: Yes, sir.

COURT: You understand that you are giving up those rights?

[PETITIONER]: Yes, sir.

The trial court continued by informing the petitioner that he had the right to remain silent and that no one could force him to plead guilty or to incriminate himself. The trial court asked the petitioner if he understood that by pleading guilty he was waiving the rights discussed and the right to appeal his convictions. The petitioner responded affirmatively and acknowledged that he understood he would have five felonies on his criminal record which could be used to enhance future punishments. The petitioner also acknowledged the plea agreement was the result of discussions with his attorney and the state and said he understood he would serve his sentence in the penitentiary.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court stated that the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). These circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea resulting from ignorance, misunderstanding, coercion, inducements, or threats is not "voluntary." Id.

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904. In Boykin v. Alabama, the United States Supreme Court stated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the right against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Although these rights are repeated in Mackey and in Rule 11(c)(3), Tenn. R. Crim. P., only constitutionally-grounded rights are relevant under the Post-Conviction Procedure Act. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989). To the extent the petitioner's claim is based upon the requirements for the taking of guilty pleas imposed by Mackey and Rule 11, Tenn. R. Crim. P., but not related to constitutional rights, it is not cognizable in a suit for post-conviction relief. See State v. Neal, 810 S.W.2d 131, 137 (Tenn. 1991); Prince, 781 S.W.2d at 846. Post-conviction relief is available only when a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-105.

The record reflects that the trial court satisfied the requirements of Boykin. During the plea colloquy between the petitioner and the trial court at the plea hearing, the trial court informed the petitioner he had a right to plead not guilty, the right to not incriminate himself, and the right to confront witnesses. The petitioner acknowledged that he understood. The trial court also informed him that he had the right to have a jury trial and be represented by an attorney. When he appeared confused about the issue of waiving a jury trial, he was given an opportunity to confer with his attorney. Immediately thereafter, he confirmed that he understood he was giving up his right to a jury trial. He also acknowledged that he had the right to remain silent, that no one could force him to plead guilty or to incriminate himself, and that he understood by pleading guilty he was waiving

the rights listed by the trial court. We conclude that the petitioner's guilty pleas were knowing, voluntary, and intelligent.

We conclude that the petitioner received the effective assistance of counsel and that his guilty pleas were knowing, voluntary, and intelligent. Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE